UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KYLE REED,

                    Plaintiff,                            Case No. 1:21-cv-11112

v.                                        Honorable Thomas L. Ludington
                                                United States District Judge
PRESQUE ISLE COUNTY, KENNETH
RADZIBON, and LUKE RYAN,

                    Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
AND DISMISSING COMPLAINT WITH PREJUDICE**

In October 2019, two dogs allegedly attacked a horse. A veterinarian responded to the

scene and advised the horse's owners that the horse should be euthanized given the severity of its

injuries. Police responded to the scene and warrantlessly seized the dogs, which were also severely

injured. Following the seizure, as required by Michigan law, the county prosecutor initiated civil

destruction proceedings against Amanda Reed, who co-owned the dogs along with her estranged

husband Kyle Reed, who was in North Dakota at the time of seizure. As a result of the civil

destruction proceedings against Amanda, the 89th Judicial District Court in Michigan ordered the

dogs to be euthanized. This order was affirmed by both the Third Circuit Court of Presque Isle

County and the Michigan Court of Appeals. The Michigan Supreme Court denied Amanda's

appeal.

Nearly two years after the seizure, Kyle Reed filed this federal lawsuit against the seizing

sheriff's deputy, the county prosecutor, and the county itself, alleging that, by initiating civil

destruction proceedings without him and keeping his dogs from him, Defendants converted his

property and deprived him of Fourth Amendment and Fourteenth Amendment rights. In addition to § 1983 damages, Plaintiff seeks an extraordinary remedy: that this Court declare the state proceedings against Amanda "void" and enjoin the state from executing the twice-affirmed destruction order. Plaintiff filed a motion for summary judgment on all claims other than conversion and Defendants filed a joint motion for summary judgment on all claims.

Plaintiff's statutory conversion claim fails as a matter of law because Plaintiff has not shown, even if Defendants "converted" his Dogs, that such conversion was for personal use. Plaintiff's common law conversion claim fails because all Defendants are entitled to immunity under Michigan's Governmental Tort Immunity Act. Plaintiff's due process claims fail as a matter of law because Plaintiff, who had notice of the state destruction proceedings for nearly two years, has not shown any prejudice by being excluded from these proceedings. And although Plaintiff's Fourth Amendment rights were deprived by the seizing sheriff's deputy, all individual Defendants are immune from damages and Plaintiff lacks standing to seek the injunctive relief he requests.

## I.

### A.

Plaintiff Kyle Reed co-owns two American bulldogs, Koarick and Crowley (the "Dogs"), alongside his wife, Amanda Reed, although the two are currently separated. *See* ECF Nos. 1 at PageID.2–3; 46 at PageID.676; 46-3 at PageID.711; 46-12 at PageID.883. On October 15, 2019, Charles Kendziorski entered his barn in Presque Isle, Michigan—located "a minute" away from the home Plaintiff and Amanda shared at the time—and saw that his horse's face had been mauled and the horse's chest, legs, and underside had exposed flesh and bleeding, deep lacerations. ECF Nos. 45 at PageID.443; 45-5 at PageID.592; 45-3 at PageID.505. Although Kendziorski did not see how his horse was attacked, he saw Plaintiff's Dogs were about ten feet away from the horse

and were bloody, growling, barking, and posturing. ECF No. 45 at PageID.443. Kendziorski called

a veterinarian to the scene, who confirmed that the horse's injuries were "consistent with bite

wounds[,]" and determined that the horse needed to be euthanized. ECF No. 45 at PageID.443–

44.

The Kendziorskis also called Amanda who arrived at the barn minutes later. ECF No. 45-

3 at PageID.504–5. Plaintiff was over a thousand miles away as his job required him to work in

North Dakota for up to six weeks at a time. ECF No. 46-3 at PageID.722; *see also* ECF No. 46-12

at PageID.882. Amanda described the scene at the Kendziorski barn as "pretty scary" because the

Dogs were severely injured, too. ECF No. 45-3 at PageID.505. Koarick's jaw was "hanging off of

his face" which was "bloody and disfigured." *Id.* Both Dogs "had cuts all over their bodies."[1]

Amanda then picked up both Dogs and placed them in the back of her SUV. *Id.*

The Kendziorskis also called 911 and Defendant Luke Ryan—a Presque Isle Sherriff's

Deputy—and Ryan Beaudry—a Presque Isle Sherriff Sergeant and Defendant Ryan's direct

supervisor—arrived at the barn about 20 minutes later, after Amanda had secured the Dogs in her

SUV. *See* ECF Nos. 45 at PageID.443; 45-5 at PageID.591–92. Beaudry told Defendant Ryan to

seize the Dogs and Defendant Ryan did so, believing that the seizure was "in the best interest of

public safety" and that the Dogs "posed a hazard to the community and needed to be taken." ECF

No. 45-5 at PageID.594. Defendant Ryan also issued Amanda a citation for having a "dangerous

animal"[2] in violation of the Michigan Dog Law, MICH. COMP. LAWS § 287.261 *et seq.*, drove the

---

[1] The extent of the Dogs' injuries is disputed. Defendant Ryan testified that the Dogs "had some minor scratches" and that one had "an injured jaw[.]" ECF No. 45-5 at PageID.594.

[2] The citation was later "adjusted" by Defendant Radzibon to allege that Ms. Reed allowed a dog to stray. ECF No. 45-5 at PageID.596. Defendant Radzibon stated he made this adjustment after "look[ing] at the two different dog laws and ma[king] a determination which one [he] felt would apply to the facts of this case." ECF No. 45-12 at PageID.627.

Dogs to a veterinarian clinic where they received care, and then "brought the dogs back to the police department[.]" ECF No. 45-5 at pageID.595–96. At some point, the Dogs were transferred to the Cheboygan Humane Society, where they remain. *See id.* at PageID.596; ECF No. 46 at PageID.678 (noting the humane society is "responsible . . . for the ongoing holding of the Dogs").

The next day, after reviewing photographs of the scene and the police report, Defendant Kenneth Radzibon—a Presque Isle County Assistant Prosecutor—authorized a *criminal* complaint against Amanda, charging her with two misdemeanor counts of allowing a dog to stray, in violation of the Michigan Dog Law, Mich. Comp. Laws § 287.262. ECF Nos. 45 at PageID.444; 45-12 at PageID.626. Amanda pleaded guilty to one count and was sentenced to six months of probation. *Id.* Defendant Radzibon also initiated *civil* proceedings in the 89th Judicial District Court against Amanda Reed (the "state destruction proceedings") for possessing two dangerous animals—the Dogs—in violation of the Michigan Dog Law, Mich. Comp. Laws § 287.286a. ECF No. 28 at PageID.379; *see also People v. Reed*, No. 19-8042-GZ (Mich. 89th Dist. Ct. 2019); *People v. Reed*, No. 19-8043-GZ (Mich. 89th Dist. Ct. 2019). Importantly, the complaint initiating the state destruction proceedings only identified Amanda, not Plaintiff, and described her as the "owner" of the Dogs. ECF No. 46 at PageID.677. Also importantly, Defendant Radzibon, as the complainant, attached a statement in support of both civil complaints attesting to the Dogs' dangerousness. *See* ECF No. 46-5. As a result of the civil proceedings, the 89th Judicial District Court ordered the Dogs to be euthanized. *Id.* at PageID.677–78.

Amanda appealed. ECF No. 3 at PageID.35. But, on February 24, 2020, the Fifty-Third Circuit Court of Presque Isle County affirmed the order to euthanize or "destroy" the Dogs. ECF No. 28 at PageID.380; *see also People v. Reed*, 19-003234-AV (Mich. 53d Cir. Ct. 2020); *People v. Reed*, 19-003235-AV (Mich. 53d Cir. Ct. 2020)). The Michigan Court of Appeals then affirmed

the state circuit court euthanasia order. *People v. Reed*, No. 353140, 2021 WL 3975095 (Mich. Ct. App. Sept. 2, 2021) (unpublished) (per curiam). In November 2021, the Michigan Court of Appeals denied reconsideration. *People v. Reed*, No. 353140 (Mich. Ct. App. Nov. 9, 2021). The Michigan Supreme Court denied Amanda leave to appeal. *People v. Reed*, 509 Mich. 1053, 975 N.W.2d 469 (2022).

## B.

On May 14, 2021, Plaintiff filed a five-count Complaint in this Court alleging that Defendants deprived him of his Fourth Amendment rights by seizing his Dogs, in violation of 42 U.S.C. § 1983 (Counts I and III); deprived him of his Fourteenth Amendment procedural due process rights by failing to include him as a party or an owner in the state destruction proceedings, in violation of 42 U.S.C. § 1983 (Counts II and III); and illegally converted his Dogs under Michigan and common law (Count V). ECF No. 1. Plaintiff also brought a separate "Declaratory and Injunctive Relief" count, seeking a declaratory judgment voiding the state destruction order as to Plaintiff and enjoining the destruction of Plaintiff's Dogs (Count IV). *Id.*

One month later, Plaintiff filed a motion for a preliminary injunction in this Court to "enjoin[] the destruction of Plaintiff's Dogs pending these proceedings." ECF No. 3 at PageID.48. That Motion was denied as moot two weeks later because the Michigan Court of Appeals stayed the Dogs' destruction. *See People v. Reed*, No. 353140, (Mich. Ct. App. June 21, 2021); ECF No. 12.

In March 2022, Plaintiff filed a Second Motion for a Preliminary Injunction, ECF No. 27, seeking to enjoin Defendants from executing his Dogs "pending the outcome of [the instant federal] case." *Id.* at PageID.349. Defendants did not oppose. ECF No. 28 at PageID.381 ("Defendants are not opposing the entry of a preliminary injunction preserving the status quo of

the [D]ogs . . . staying the enforcement of the district court orders to destroy the [D]ogs[.]" So, the dogs currently remain in the possession of the Cheboygan Humane Society (CHS) as their destruction is stayed pending the result of above-captioned federal case.  *See* ECF No. 45-4 at PageID.578; ECF No. 46 at PageID.679 ("It is undisputed that Plaintiff's Dogs remain in the possession [of] CHS [and have been there] for now over 39 months.").

On February 24, 2023 Plaintiff filed a Motion for Summary Judgment on all claims other than state law conversion (Count V), ECF No. 46, and Defendants filed a joint cross Motion for Summary Judgment on all claims, ECF No. 45.

## II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When the moving party "also bears the burden of persuasion at trial, [its] 'initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) ("[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.") (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984) (emphasis omitted))).

In reviewing cross-motions for summary judgment, courts must apply the proper standard of review for each motion and may not "treat the case as if it was submitted for final resolution on a stipulated record." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) ("[W]here, as here, the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" (quoting *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016)) (internal quotation marks omitted)).

## III.

### A.  Fourth Amendment

In Count I, Plaintiff alleges Defendants unreasonably seized his Dogs on October 15, 2019, depriving him of his Fourth Amendment rights in violation of 42 U.S.C. § 1983. ECF No. 1 at

PageID.6–8. Plaintiff specifically argues that (1) Defendant Ryan deprived Plaintiff of his Fourth Amendment rights by unreasonably seizing the Dogs on October 15, 2019, ECF No. 46 at PageID.686–88; (2) Defendant Radzibon deprived Plaintiff of his Fourth Amendment rights by failing to investigate ownership of the Dogs before filing the criminal and state destruction proceedings against Amanda alone, *id.* at 688–90; and (3) Defendant Presque Isle County is liable as a municipality under *Monell* because Defendant Radzibon acted as a final decisionmaker and promulgated an "official policy" of the County when filing the civil and criminal complaints. *Id.* at PageID.695–99. Each Defendant's liability will be addressed in turn.

### 1. Defendant Ryan

Plaintiff first argues that Defendant Ryan deprived him of his Fourth Amendment rights in violation of § 1983 when he physically took the Dogs from Amanda after arriving at the scene on October 15, 2019. Defendant Ryan seized the Dogs that day—and this seizure was without a warrant, unreasonable, and violated the Fourth Amendment. But Defendant Ryan did not violate clearly established law and is entitled to qualified immunity.

The Fourth Amendment protects "persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. The Sixth Circuit has routinely recognized that a dog is an "effect" under the Fourth Amendment. *See, e.g.*, *White v. Detroit*, 38 F.4th 495, 498 (6th Cir. 2022); *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016). When analyzing a Fourth Amendment claim, courts first ask whether a search or seizure occurred and, if so, whether this search or seizure was reasonable. *See Graves v. Mahoning Cnty.*, 821 F.3d 772, 775 (6th Cir. 2016) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599, (1989) and *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir.2014)).

**a. Seizure**

There is no genuine question of material fact that the Dogs were seized on October 15, 2019. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Brown*, 844 F.3d at 566 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Plaintiff had a possessory interest in his Dogs. Under the Michigan Dog Law, "[i]t is settled . . . that dogs have value, and are the property of the owner as much as any other animal which one may have or keep." *Smith v. Detroit*, 751 F. App'x 691, 695 (6th Cir. 2018) (citing *Ten Hopen v. Walker*, 55 N.W. 657, 658 (Mich. 1893).[3] The Dog Law defines an "owner" as "every person having a right of property in the dog, and every person who keeps or harbors the dog or has it in his care, and every person who permits the dog to remain on or about any premises occupied by him." MICH. COMP. LAWS § 287.261. As Plaintiff points out, this definition encompasses multiple owners. ECF No. 46 at PageID.679. Indeed, both Plaintiff and Amanda are "owners" under this definition because both decided to obtain the Dogs,[4] ECF No. 46-3 at PageID.711–12, both lived with the Dogs, ECF No. 46 at PageID.680, both trained the Dogs, ECF No. 46-3. at PageID.713, and both cared for the Dogs by taking them to the vet and paying associated bills. ECF 46-12 at PageID.888–89. And Plaintiff's possessory interest was interfered with—Defendants do not dispute that the Dogs were seized. *See, e.g.*, ECF Nos. 45 at PageID.446, 451–52, 454, 456, 459, 46; 45-5 at PageID.594–94; 45-12 at PageID.628.

---

[3] Although this case was decided prior to the modern Michigan Dog Law, Michigan courts continue to apply it. *Smith*, 751 F. App'x at 695 n. 4 (citing *Koester v. VCA Animal Hosp.*, 624 N.W.2d 209, 211 (Mich. App. 2000) ("Pets have long been considered personal property in Michigan jurisprudence.") (citing *Ten Hopen*, 55 N.W. at 657)).

[4] According to Amanda, she and Plaintiff obtained Koarick about one year before the October 2019 seizure and obtained Crowley about one month before the seizure. ECF No. 46–3 at PageID.711–12. Plaintiff, on the other hand, asserts he and Amanda obtained both Dogs about six months before the seizure. ECF No. 46-12 at PageID.889.

### b. Reasonableness

Finding a seizure is only half of the analysis—the next issue is whether the seizure was unreasonable. Warrantless seizures are *per se* unreasonable and violate the Fourth Amendment. *See Place*, 462 U.S. at 701; *United States v. Blue Diamond Coal Co*., 667 F.2d 510, 518 (6th Cir. 1981); *United States v. Hermiz*, 42 F. Supp. 3d 856, 865 (E.D. Mich. 2014). Although it is undisputed that the October 2019 seizure was unaccompanied by a warrant, ECF Nos. 46-4 at PageID.749; 48 at PageID.1000, several exceptions to the warrant requirement exist which may render a seizure without a warrant nevertheless reasonable. The Government bears the burden of demonstrating an exception to the warrant requirement applies. *United States v. Jeffers*, 342 U.S. 48, 51 (1951).

Defendants assert that two exceptions apply: exigent circumstances and community caretaking.[5] No. 45 at PageID.448–49. But neither do.

### i. Exigent Circumstances

The exigent circumstances exception "applies when 'the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable.'" *Lange v. California*, 141 S. Ct. 2011, 2017 (2021) (quoting *Kentucky v. King*, 563 U.S. 452, 460 (2011)). Although this exception is analyzed on a case-by-case basis under the totality of the circumstances, exigent circumstances traditionally involve "some real immediate and serious consequences." *Id.* at 2017–18 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 751 (1984) and

---

[5] Defendants also assert the seizure was reasonable because Defendant Ryan "had probable cause to associate the dogs with criminal activity." ECF No. 45 at PageID.450. But whether Defendant Ryan had probable cause is irrelevant. Indeed, one of the policy rationales supporting the warrant requirement is that *neutral and detached magistrates*, not on-the-ground officers, should assess whether probable cause exits for a search or seizure to be effectuated. *See Shadwick v. Tampa*, 507 U.S. 345, 350 (1972) ("This Court long has insisted that inferences of probable cause be drawn by 'a neutral and detached magistrate instead of being judged by the officer engaged in the officer[.]'").

*McDonald v. United States*, 335 U.S. 451, 460 (1948) (Jackson, J., concurring)). In other words, the exception traditionally applies to "now or never" situations. *Id.* at 2018; *Riley v. California*, 573 U.S. 373, 391 (2014); *Missouri v. McNeely*, 569 U.S. 141, 153 (2013); *Roaden v. Kentucky*, 413 U.S. 496, 505 (1973). The Sixth Circuit has recognized that this exception applies to animals just as it applies to people and "allows officers to ensure the safety of animals exposed to dangerous exigent circumstances." *King v. Montgomery Cnty*, 797 F. App'x 949, 955 (6th Cir. 2020). But the Sixth Circuit has largely applied this exception to uphold the warrantless seizure of animals only when the seized animals were injured or faced with an immediate threat of harm themselves—not when, as here, the seized animals had injured another animal. *See King*, 797 F. App'x at 955–56 (finding exigency to seize dogs, without a warrant, from a home when dogs could not breathe due to ammonia fumes, lacked food and water, and needed urgent veterinary care); *United Pet Supply, Inc. v. Chattanooga*, 768 F.3d 464, 490 (6th Cir. 2014) (finding exigency to warrantlessly seize pets inside store because animals were dehydrated, had no water, and were facing extreme unsanitary and neglectful conditions).

But the exigency exception only applies so long as exigency exists. When exigent circumstances disappear, so too does an officer's authority to seize without a warrant. *Mincey v. Arizona,* 437 U.S. 385, 393 (noting warrantless searches must be "strictly circumscribed by the exigencies which justify its initiation" (quoting *Terry v. Ohio*, 392 U.S. 1, 25–26 (1968))). In *Mallory v. City of Riverside*, the Southern District of Ohio held that no exigency existed to support the warrantless seizure of chickens and roosters because, although officers had information that the fowl had been used for cockfighting and saw the injured animals inside the plaintiff's garage, the animals were *secured* in cages at the time of seizure. *Mallory v. Riverside*, 35 F. Supp. 3d 910, 930–31 (S.D. Ohio 2014). The *Mallory* court noted, "even with the apparent injuries, the [fowl]

- 11 -

were crated and not in substantial harm from which they needed immediate and warrantless removal" and that "[e]quipped with the knowledge that there was possible cockfighting at this location, but due to the current 'safe' environment, it would have been prudent for the officers to secure the outside of the garage and obtain a warrant." *Id.* at 931. The same result, here. Before arriving at the Kendziorski barn, Defendant Ryan knew from dispatch that two dogs allegedly attacked a horse inside the stables. ECF No. 45-5 at PageID.592. But, when Defendant Ryan arrived at the barn, it is undisputed that the Dogs were secured. ECF No. 46-4 at PageID.748. A veterinarian was present and was examining the horse in peace. The Kendziorskis were calm. ECF No. 45-3 at PageID.504–05. The Dogs were calm and secured in Amanda's SUV. ECF Nos. 45-3 at PageID.505; 45-4 at PageID.552. Although there may have been exigency to seize the Dogs without a warrant as they were *attacking* the horse or as they were *being attacked* by the horse, any such exigency disappeared by the time Defendant Ryan seized the Dogs. Accordingly, exigent circumstances did not exist and this exception to the warrant requirement does not apply.

### ii. Community Caretaking

The community caretaking exception to the warrant requirement is similarly inapplicable. The community caretaker exception applies when a government official searches or seizes in a manner "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Taylor v. City of Saginaw*, 922 F.3d 328, 335 (6th Cir. 2019) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). But the seizure here is not "totally divorced" from such investigation and acquisition. Violations of the Michigan Dog Law can lead to *criminal* charges. MICH. COMP. LAWS § 287.286 ("Any person . . . violating . . . any of the provisions of this act shall be guilty of a misdemeanor and upon conviction shall pay a fine . . . or shall be imprisoned.") Indeed, Amanda pleaded guilty to one count of violating the Michigan Dog

Law and was sentenced to six months of probation after the Dogs were seized, ECF No. 45 at PageID.444–45. Defendants even concede that "the [D]ogs were evidence in the criminal action[.]" ECF No. 48 at PageID.1000.

Further, the Sixth Circuit has stressed that the community caretaking exception is a narrow one and does not apply except "when delay is reasonably likely to result in injury or ongoing harm to the community at large." *Id.* at 335 (quoting *United States v. Washington*, 573 F.3d 279, 289 (6th Cir. 2009)). But Defendants have not shown that delay would be reasonably likely to harm or injure the community. Again, it is undisputed that Dogs were "calm," "secured," and sitting in the back of Amanda's SUV at the time of seizure. ECF Nos. 45-3 at PageID.505; 45-4 at PageID.552. Because the seizure was not "totally divorced" from criminal proceedings and the undisputed record shows the Dogs were secure at the time of seizure, the community caretaking exception to the warrant requirement does not apply and will not render the warrantless seizure reasonable.

In sum, the facts are clear that Defendant Ryan seized the Dogs without a warrant on October 15, 2019. Because exigent circumstances did not exist, the community caretaking exception does not apply, and the government-Defendants have not shown any other exception to authorize this seizure without a warrant, the October 15 seizure was unreasonable and violated Plaintiff's Fourth Amendment rights.

### c. Qualified Immunity

Although Defendant Ryan's seizure violated the Fourth Amendment, he is entitled to qualified immunity and is shielded from § 1983 damages liability.

"Qualified immunity shields government officials from civil liability in the performance of their duties so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Getz v. Swoap*, 833 F.3d

646, 652 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent and those who knowingly violate the law." *Id.*; *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). When assessing qualified immunity, courts apply the "*Saucier* two step," asking (1) whether a constitutional right has been violated; and (2) whether that right was clearly established—though reviewing courts need not proceed in this order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be treated as mandatory."). Plaintiffs bear the burden of demonstrating both prongs. *See Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020).

As discussed above, Defendants Ryan violated Plaintiff's Fourth Amendment right by seizing the Dogs without a warrant on October 15, 2019 without exception. The only remaining question is whether this right was clearly established. This prong of the qualified immunity analysis asks whether it was sufficiently clear that a reasonable officer would understand their actions violate a right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *Reichle v. Howards*, 566 U.S. 658 (2012)). And this Court should not define the right "at a high level of generality," but rather must define the right as "particularized" to the facts of the case. *White v. Pauly*, 580 U.S. 73, 137 (2017) (per curiam); *see also Hopkins v. Nichols*, 37 F.4th 1110, 1116 (6th Cir. 2022). While there need not be a case directly on point, existing precedent must place the constitutional question "beyond debate." *Mullenix*, 577 U.S. at 11. Sources of "clearly established law" include, from most to least persuasive, Supreme Court precedent, controlling Sixth Circuit precedent, this Court's precedent, or a "robust consensus of cases of persuasive authority." *See Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 876 (6th Cir. 2012); *Ashcroft*, 563 U.S. at 742.

The Fourth Amendment right Defendant Ryan violated is far from clearly established. In 2014, it appears that the Southern District of Ohio was the first court within the Sixth Circuit to consider the applicability of the exigent circumstances exception to the seizure of animals. As discussed above, in *Mallory*, the Southern District of Ohio found that the warrantless seizure of cockfighting fowl was unreasonable because the fowl were secured at the time of seizure and officers could have waited for a warrant, despite the animals' injuries. *Mallory*, 35 F. Supp. 3d at 930–31. But after finding the seizure unconstitutional, the *Mallory* court noted:

> [G]iven the changing nature of the law regarding exigent circumstances as applicable to animals, the contours of the law were not clearly established. . . . [I]t is very possible that officers of reasonable competence could and would disagree as to the law[.] Because the law on exigent circumstances to protect the lives or health of animals was not clearly established, and because a reasonable person would not have known at the time whether this conduct violated clearly established statutory or constitutional rights, [the defendants] are entitled to qualified immunity.

*Id.* at 931. The law has not become clear, since. The Parties in *Mallory* did not appeal, so the Sixth Circuit never had an opportunity to address the issue. Indeed, neither the Supreme Court, the Sixth Circuit, nor this Court have squarely addressed the issue analyzed in *Mallory* and presented here: whether exigent circumstances justify the warrantless seizure of animals when the animals are believed to have harmed other animals but were secure at the time of seizure. And although *Mallory may* serve as clearly established law for some officers in Ohio, it does not serve as a source of clearly established law in this Court.

Sixth Circuit precedent addressing exigency to seize animals without warrants is uninstructive and, even when considered, only further supports the conclusion that Defendant Ryan would not have known his actions violated Plaintiff's Fourth Amendment rights. *See, e.g.*, *United Pet Supply*, 768 F.3d 464 (finding warrantless seizure of animals did *not* violate the Fourth Amendment because exigency existed as officers had reason to believe animals were in danger);

*King*, 797 F. App'x at 955–56 (finding warrantless seizure of dogs within home supported by exigency and did *not* violate Fourth Amendment because an officer had reason to believe dogs were being abused).[6]

Plaintiff cites *Smith v. Detroit* as a source of clearly established law. ECF No. 49 at PageID.1226. True, in *Smith v. Detroit*, the Sixth Circuit recognized that people have a Fourth Amendment right not to have their dogs unreasonably seized "and that this right was clearly established in 2013." *Smith*, 751 F. App'x at 695. But *Smith* does not stand for what Plaintiff suggests it does—that *any* unreasonable seizure of a dog strips the seizing officer of qualified immunity. *See* ECF No. 49 at PageID.1226. Indeed, Plaintiff's approach would collapse the qualified immunity analysis into the underlying constitutional violation. *Smith* involved officers shooting and killing dogs which allegedly attacked them throughout the execution of a search. *Id.* at 693. And *Brown v. Battle Creek Police Department*, the case cited as a source of "clearly established law" in *Smith*, involved the same. *Brown*, 844 F.3d at 561–62; *see also Smith*, 751 F. App'x at 695. These cases do not make it "sufficiently clear" that a reasonable officer in Defendant Ryan's position would understand that seizing the Dogs—alleged to have mauled a horse to the point it needed to be euthanized—violated the rights of Plaintiff—who was not even in the state, let alone on the scene. Although this Court, with the advantage of 20-20 hindsight, found that no exigency justified the warrantless seizure, Defendant Ryan's actions did not violate clearly established law. Defendant Ryan is entitled to qualified immunity.

---

[6] Although one Sixth Circuit case, *Hadrick v. Detroit*, 876 F.3d 238 (6th Cir. 2017) held, analogous to the October 2019 seizure here, that no exigency authorized the seizure of dogs without a warrant, the case is factually distinguishable and thus not a source of clearly established law. No exigency existed in *Hadrick* because the seizure of the dogs occurred 53 days after the dogs allegedly attacked a neighbor. *Id.* at 246. Here, Defendant Ryan's seizure occurred shortly after the Dogs allegedly attacked a horse and no exigency existed because the dogs were secure at the time of seizure. *See* ECF No. 46-4 at PageID.746, 748.

In sum, although Defendant Ryan's seizure of Plaintiff's Dogs without a warrant on October 15, 2019 violated the Fourth Amendment, he is entitled to qualified immunity from Plaintiff's § 1983 Fourth Amendment claim, to the extent this claim seeks damages.

### 2. Defendant Radzibon

Plaintiff also pursues § 1983 Fourth Amendment claims against Defendant Kenneth Radzibon, the Prosecuting Attorney for Defendant Presque Isle County. ECF No. 1 at PageID.3. Plaintiff argues that by authorizing the civil complaints in the state destruction proceedings, Defendant Radzibon "seized" the Dogs under the Fourth Amendment—and that this seizure was unreasonable because Plaintiff was not included as a party.[7] But Defendant Radzibon's conduct, assuming it was a "seizure" under the Fourth Amendment, was not unreasonable and did not deprive Plaintiff of his Fourth Amendment rights. And, even if it did, Defendant Radzibon is entitled to absolute prosecutorial immunity.

### a. Reasonableness

Assuming Defendant Radzibon's conduct constituted a "seizure" under the Fourth Amendment,[8] it was not unreasonable. "Reasonableness is the touchstone of any seizure under the Fourth Amendment." *Brown*, 844 F.3d at 567 (quoting *San Jose Charter of Hells Angels Motorcycle Club v. San Jose*, 402 F.3d 962, 975 (9th Cir. 2005)). When analyzing whether a seizure is reasonable, courts should balance the need to seize against the invasion which the seizure entails. *Terry*, 392 U.S. at 21; *Williams v. City of Grand Rapids*, No. 1:21-CV-1011, 2023 WL

---

[7] Reframed, Plaintiff's argument is that Defendant Radzibon violated the Fourth Amendment by *not* naming Plaintiff as a party in civil state destruction proceedings.

[8] Aside from citing to *Jacobsen*, 466 U.S. at 113, which defines a seizure as "some meaningful interference with an individual's possessory interests in . . . property[,]" Plaintiffs do not cite *any* case to support the conclusion that an attorney's initiation of civil proceedings, which result in the *retention* of property, constitutes a seizure under the Fourth Amendment. *See generally* ECF Nos. 1; 46; 49; 54. And this Court has not identified any analogous precedent.

3316869 (W.D. Mich. May 9, 2023). A seizure is reasonable if the effectuating official can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. Unreasonableness "varies from case to case, from type of seizure to type of seizure." *Graves*, 821 F.3d at 775. And the lack of warrant here, unlike Defendant Ryan's seizure, is irrelevant. "[I]t is only when the seizure at issue 'requires a warrant' that 'the failure to satisfy the Warrant Clause' creates a problem." *Id.* (quoting B*aranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 455 (6th Cir. 2006) (en banc)).

Here, Defendant Radzibon signed two state civil "dangerous animal" complaints against Amanda, alleging violations of the Michigan Dog Law. As explained below, he was statutorily required to be the complainant and to attach a sworn statement in support. *See* discussion *infra* III.A.2.b. The initial decision to file the complaints was reasonable and within Defendant Radzibon's prosecutorial discretion. Before filing the complaints, Defendant Radzibon received and reviewed the police report and numerous photographs of the Dogs, the horse, and the scene. ECF No. 46-7 at PageID.769–70. Defendant Radzibon also researched the Michigan Dog Law to ensure the specific allegations in the complaints were sound. ECF No. 46-7 at PageID.769–70. And Plaintiff's exclusion from the state destruction proceedings initiated by Defendant Radzibon against Amanda is reasonable, too. Amanda responded to the scene on October 15, 2019, identified herself as the owner of the Dogs, placed the Dogs in her car, and was listed as the owner of the Dogs in the police report reviewed by Radzibon. *Id.* at PageID.769. Plaintiff was in North Dakota. ECF No. 46-12 at PageID.882. In other words, Defendant Radzibon's decision to file the complaints which initiated the state destruction proceedings against Amanda was reasonably

warranted by specific and articulable facts. *See Terry*, 392 U.S. at 21. Accordingly, Defendant Radzibon did not deprive Plaintiff of his Fourth Amendment rights.

### b. Absolute Prosecutorial Immunity

But, even if Defendant Radzibon's actions were unreasonable and violated the Fourth Amendment, Defendant Radzibon is entitled to absolute prosecutorial immunity from this claim and all other § 1983 claims Plaintiff asserts against him.

"American law has long recognized 'absolute immunity' for those 'whose special functions or constitutional status requires complete protection from suit.'" *Barnett v. Smithwick*, 835 F. App'x 31, 35–36 (6th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)). And this "brand of immunity extends to government officers like prosecutors whose activities are 'intimately associated' with the judicial process." *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Indeed, the Sixth Circuit has repeatedly recognized that absolute prosecutorial immunity has a "long reach" and "extends even to 'unquestionably illegal or improper conduct,' including instances where a defendant is genuinely wronged." *Price v. Montgomery Cnty.*, 72 F.4th 711, 719 (6th Cir. 2023) (quoting *Cady v. Arenac County*, 574 F.3d 334, 340 (6th Cir. 2009)).

However, absolute prosecutorial has *some* limits. First, absolute prosecutorial immunity applies to damages, not declaratory relief. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Second, a prosecutor is not absolutely immune from suit if their challenged conduct is not "intimately associated with the judicial process." *Id.* at 719–20; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Examples of prosecutorial conduct not intimately associated with the judicial process—and thus subject to suit—include investigative efforts to obtain arrest warrants, authorizing wiretaps, advising the police, making statements at press conferences, and making statements in arrest warrant affidavits. *See id.*; *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir.

2003) (collecting cases). "The analytical key to prosecutorial immunity, therefore, is advocacy—whether the actions in question are those of an advocate." *Spurlock*, 330 F.3d at 798 (quoting *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000)). Accordingly, "the 'critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process.'" *Id.*

Plaintiff argues that Defendant Radzibon deprived Plaintiff's constitutional rights because he "never investigated the ownership of the Dogs" before attesting to ownership and dangerousness when he initiated the state destruction proceedings against Amanda, and that an investigation would have revealed Plaintiff as one of the Dogs' owners. ECF Nos. 1 at PageID.5; 46 at PageID.677, 680, 88–89. Defendants argue, citing *Cooper v. Parrish*, 203 F.3d 937 (6th Cir. 2000), that Defendant Radzibon is entitled to absolute prosecutorial immunity because his service as the complainant and his affidavit in support are akin to advocating for the state in initiating judicial proceedings and thus "intimately associated with the judicial process." *See* ECF No. 45 at PageID.447. Plaintiff counters by citing *Kalina v. Fletcher*, 522 U.S. 118 (1997) and arguing that, by swearing to factual statements in support of the civil complaints, Defendant Radzibon acted as a witness, not an advocate, and is thus not entitled to absolute qualified immunity. *See* ECF No. 46 at PageID.692–93. The cases the Parties cite are seemingly at odds when applied to the facts of this case.

In *Kalina*, decided in 1997, a prosecutor supported an arrest warrant—initiating criminal proceedings—with a "Certification for Determination of Probable Cause", and "personally vouched for the truth of the facts set forth in the [C]certification under the penalty of perjury." *Kalina*, 522 U.S. at 129–30. The Supreme Court emphasized, though, that "neither federal nor state law made it necessary for the prosecutor to make that [C]ertification. In doing so, [the

prosecutor] performed an act that any competent witness might have performed." *Id.* Accordingly, the Supreme Court denied absolute prosecutorial immunity because the prosecutor was acting as a witness testifying about facts, instead of as a prosecutor advocating or initiating judicial proceedings. *Id.* at 130.

In *Cooper*, decided three years later, the Sixth Circuit upheld absolute prosecutorial immunity for two prosecutors who filed public nuisance and civil forfeiture complaints because the prosecutors were not performing any investigative function and, instead, were "functioning squarely within their capabilities as advocates for the state when they filed" these civil complaints. *Cooper*, 203 F.3d at 947–48. The Sixth Circuit noted:

> "[T]he prosecutors in this case may still be immune even though the alleged constitutional violations occurred when the officials were pursuing a *civil* action. Indeed, so long as the prosecutors were functioning in an enforcement role and acting as advocates for the state in initiating and prosecuting judicial proceedings, they are entitled to an absolute immunity defense."

*Id.* at 947. However, consistent with *Kalina*, the Sixth Circuit held that a third prosecutor was not entitled to absolute prosecutorial immunity when he swore to the truth of factual allegations in the public nuisances and civil forfeiture complaints because, under applicable Tennessee law, the prosecutor was not required to do so and, thus, the prosecutor "performed 'an act that any competent witness might have performed.'" *Id.* at 949 (quoting *Kalina*, at 129–30).

Defendant Radzibon's conduct is analogous to the two *Cooper* prosecutors entitled to absolute immunity and distinguishable from the prosecutors denied immunity in *Cooper* and *Kalina*. True, as Plaintiff argues, like the prosecutor's denied immunity in *Kalina* and *Cooper*, Defendant Radzibon attested to factual statements in support of the civil complaints.[9] *See* ECF

---

[9] Notably, Defendant Radzibon was not attesting to the truth of factual statements under penalty of perjury, as a witness does under oath at trial. The Court in *Kalina* expressly framed "the critical question" as "whether [the prosecutor] was acting as a complaining witness rather than a lawyer

Nos. 46-5; 46-6. But, unlike the prosecutors denied immunity in *Kalina* and *Cooper*, Defendant

Radzibon was not performing a function that "any competent witness might have performed." *See*

*Kalina*, 522 U.S. at 129–30. In *Cooper*, the Sixth Circuit held that the third prosecutor was not

entitled to absolute immunity because, although he was *authorized* to file a civil complaint and

swear to the truth of factual allegations contained within, state law did not *require* a prosecutor to

do so. *Cooper*, 203 F.3d at 949. The applicable Tennessee law in that case provided:

> [J]urisdiction is hereby conferred upon the chancery, circuit, and criminal courts
> and any court designated as an environmental court . . . to abate the public nuisances
> . . . upon petition in the name of the state, upon relation of the attorney general and
> reporter, or any district attorney general, or any city or county attorney, *or . . . upon*
> *the relation of ten (10) or more citizens* . . . of the county wherein such nuisances
> may exist[.]

TENN. CODE ANN. § 29-3-102 (emphasis added); *see also Cooper*, 203 F.3d at 949. But, here,

Defendant Radzibon was not just *authorized* to file the civil complaint and attest to its factual

statements, he was *required* to do so. Michigan law expressly provides:

> The prosecuting attorneys *shall*, in their respective counties, appear for the state or
> county, and prosecute or defend in all the courts of the county, all prosecutions,
> suits, applications and motions *whether civil or criminal*, in which the state or
> county may be a party or interested.

MICH. COMP. LAWS § 49.153 (emphasis added). And, as Plaintiff concedes, Michigan law further

"*requires* a sworn complaint to commence" the civil complaints filed by Defendant Radzibon.

ECF No. 46-7 at PageID.769 (emphasis added). Indeed, the civil complaints filed by Defendant

Radzibon note that he was an interested party expressly *because* he was the "prosecuting attorney."

*See* ECF Nos. 46-5 at PageID.762; 46-6 at PageID.764.

---

when she executed the [C]ertification *under penalty of perjury*." *Kalina*, 522 U.S. 129 (internal
quotations omitted and emphasis added). Unlike the prosecutor denied absolute immunity in
*Kalina*, Defendant Radzibon, was attesting that "to the best of [his] knowledge, information, and
belief formed after a reasonable inquiry, the [civil complaint] is well grounded in fact and . . .
warranted by existing law[.]" MICH. COURT R. 1.109(E)(5).

Accordingly, when filing the civil complaints and attesting to the truth of supporting facts, Defendant Radzibon was acting as an advocate for the state by initiating civil and criminal proceedings, as required by Michigan law. Because his challenged conduct was "intimately associated with the judicial process," *Imbler*, 424 U.S. at 719–20; *Buckley*, 509 U.S. at 273, Defendant Radzibon is entitled to absolute prosecutorial immunity from § 1983 damages claims, including Plaintiff's claim that Defendant Radzibon deprived him of Fourth Amendment rights.[10]

### 3.   Defendant Presque Isle County

Plaintiff also brings his § 1983 deprivation of Fourth Amendment rights claim against Defendant Presque Isle, a municipality.[11] ECF No. 1 at PageID.11–12.

In *Monell*, the Supreme Court held that municipalities can be treated as "persons" and subject to § 1983 liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). But a municipality cannot be liable for § 1983 deprivations merely because they employ an officer who deprives someone of their constitutional rights. *Monell*, 326 U.S. at 691. ("[A] municipality cannot be held liable under § 1983 on a respondent superior theory."). And a municipality cannot be liable if their officers commit no constitutional violation in the first place. *Roell v. Hamilton Cnty.*, 870 F.3d 471, 487 (6th Cir. 2017). Instead, municipalities are only liable under *Monell* for their "official policies" which cause an employee to violate another's constitutional rights. *Monell*, 436 U.S. at 692.

---

[10] In the alternative, if Defendant Radzibon is not entitled to *absolute* immunity, he is entitled to *qualified* immunity on this claim like Defendant Ryan, as Defendant Radzibon's constitutional violations—if any—are not clearly established. *See supra* Section III.A.1.c; *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) ("Only qualified immunity is available to prosecutors when they perform . . . functions unrelated to judicial proceedings.").

[11] Count III of the Complaint alleges Defendant Presque Isle County is liability under *Monell* for deprivations of both the Fourth and Fourteenth Amendment. ECF No. 1 at PageID.11–12.

Generally, there are four "avenues a plaintiff may take to prove the existence of a [defendant's] illegal policy or custom. The plaintiff can look to (1) the [defendant's] legislative enactments or official agency policies; (2) single actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). But, even when a plaintiff can show a sufficient official policy, a plaintiff must also "connect the policy to the municipality, and [] show that [the] particular injury was incurred due to the execution of that policy." *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 404 (6th Cir. 2010).

Plaintiff asserts there are "two seizures" in this case: when Defendant Ryan physically seized the Dogs on October 15, 2019 and when Defendant Radzibon "pursued and obtained an order to euthanize the Dogs" without including Plaintiff in the proceedings. ECF No. 54 at PageID.1269–70. But Plaintiff's *Monell* claim against Defendant Presque Isle focuses only on the latter. In his Motion for Summary Judgment, Plaintiff argues "Defendant Radzibon was an authorized decisionmaker with respect to . . . decisions as to which individuals would be provided constitutional protection when the County seeks the destruction."[12] ECF No. 46 at PageID.697.

---

[12] Although Plaintiff's Complaint also alleges that "Defendant [Presque Isle] County failed to train and supervise its attorneys and police officers to provide for federal constitutionally mandated pre-seizure and post-seizure detention hearings[,]" ECF No. 1 at PageID.12, Plaintiff has not shown any genuine issue of material fact to survive summary judgment under this theory of *Monell*. *See Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700–01 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992) (to succeed on a failure to train or supervise claim, Plaintiff must prove that (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of a Defendant's deliberate indifference; and (3) the inadequacy was closely related to or directly caused the injury). Indeed, Plaintiff does not discuss this theory of *Monell* liability in any briefing related to the cross summary judgment motions. *See generally* ECF Nos. 46; 54; 49.

But, as discussed, Defendant Radzibon did not deprive Plaintiff of his Fourth Amendment rights by initiating proceedings against Amanda. *See supra* Section III.A.2.a. So *Monell* liability will not lie. *Roell*, 870 F.3d at 487 (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004) (a "municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers").

In sum, because Defendant Ryan is entitled to qualified immunity and Defendant Radzibon is entitled to absolute prosecutorial immunity, Count I of Plaintiff's Complaint will be dismissed in its entirety. And Count III of Plaintiff's Complaint will be dismissed to the extent it alleges Defendant Presque Isle County deprived Plaintiff of his Fourth Amendment rights.

### B. Fourteenth Amendment Due Process

Next, throughout Counts II and III of the Complaint, Plaintiff alleges that Defendants deprived him of his Fourteenth Amendment right to procedural due process, in violation of 42 U.S.C. § 1983. ECF No. 1 at PageID.9–13. Specifically, Plaintiff alleges that (1) Defendant Ryan deprived Plaintiff of due process by "not providing a pre-deprivation hearing before seizing" the Dogs on October 15, 2019, ECF No. 54 at PageID.1270; (2) Defendant Radzibon deprived Plaintiff of due process by initiating civil proceedings which did not name Plaintiff as a party and resulted in an order that the Dogs are to be destroyed, ECF No. 46 at PageID.690–91; and (3) Defendant Presque Isle County is liable as a municipality under *Monell* because Defendant Radzibon acted as a final decisionmaker and promulgated an "official policy" of the County when filing the complaints. *Id.* at PageID.696–99. Defendant Ryan and Radzibon's liability, as individuals, will be addressed before returning to Plaintiff's combined *Monell* claim.

### 1.   Individual Defendants: Ryan and Radzibon

The Fourteenth Amendment provides "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Procedural due process, "requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection . . . , and (2) a deprivation of that interest (3) without adequate process." *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012).

### a.  Legitimate Property Interest

The first issue is whether Plaintiff has a valid property interest in the Dogs. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . [they] must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "Whether a property interest is constitutionally protected does not depend on the Constitution itself, but rather on 'existing rules or on understandings that stem from an independent source, such as state law.'" *Naturale & Co. v. City of Hamtramck*, 614 F. Supp. 3d 575, 579 (E.D. Mich. 2022) (quoting *Roth*, 408 U.S. at 577).

Undoubtedly, Plaintiff has a valid property interest in his Dogs. The Michigan Dog Law defines a dog "owner" as "*every* person who keeps or harbors the dog or has it in his care, and every person who permits the dog to remain on or about any premises occupied by him." MICH. COMP. LAWS § 287.261(c) (emphasis added). And Plaintiff falls within this definition, which expressly contemplates multiple owners. *See supra* Section III.A.1.a. Importantly, as an "owner" of the Dogs, Plaintiff is expressly vested with a legitimate property interest for due process

purposes, as the Dog Law expressly provides owners with "a right of property in the dog[s]" they own. MICH. COMP. LAWS § 287.261(c). The first procedural due process element is easily satisfied.

### b. Deprivation

 The second element is similarly satisfied. A "deprivation" for the purposes of procedural due process has a nuanced definition. On one hand, courts recognize that even temporary and indirect injuries to property suffice. *See, e.g.*, *S & M Brands, Inc. v. Summers*, 393 F. Supp. 2d 604 (M.D. Tenn. 2005), *aff'd sub nom. S&M Brands, Inc. v. Summers*, 228 F. App'x 560 (6th Cir. 2007); *Leslie v. Lacy*, 91 F. Supp. 2d 1182 (S.D. Ohio 2000); *Med Corp. v. City of Lima*, 296 F.3d 404, 413 (6th Cir. 2002) (collecting cases). On the other hand, the Supreme Court has recognized that a deprivation, in the constitutional sense, has a mens rea requirement—not any old deprivation will do. Specifically, "negligent acts by state officials, though causing loss of property, are not actionable under the Due Process Clause." *Daniels v. Williams*, 474 U.S. 327, 330 (1986). Mere negligence does not work a deprivation in the constitutional sense because the word "deprivation" in the Due Process clause connotes a certain amount of intentionality and it would be unwise to "open the federal courts to lawsuits when there has been no affirmative abuse of power." *Id.* (quoting *Parratt v. Taylor*, 451 U.S. 527, 548–49 (Powell, J., concurring))

 Defendants do not dispute that the Plaintiff's Dogs were deprived. *See generally* ECF Nos. 45; 48; 53. Nor could they. Defendant Ryan acted with more than mere negligence when he physically took the Dogs from the scene on October 15, 2019. *See* ECF No 45-4 at PageID.593–94. And although Defendant Radzibon may have been merely negligent in not naming Plaintiff as a party in the state destruction proceedings, his decision to file the complaints was intentional. *See* ECF No. 45-12 at PageID,626–27 (describing that Defendant Radzibon reviewed the police report

and photos of the scene and researched the Michigan Dog Law prior to filing). Plaintiff's legitimate property interest in his Dogs was deprived by both Defendant Ryan and Defendant Radzibon.

### c. Adequacy of Process

The third and final due process element is less clear. The Supreme Court has routinely recognized that due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). When assessing the adequacy of process provided to an individual deprived of their legitimate property interest in a particular case, courts consider (1) the private interest affected by the government action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government interest, including the fiscal or administrative burdens that the additional or substitute procedural requirements would entail. *Id.* (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Applying this framework, the Supreme Court has identified a general rule and a "special case." Under the general rule, *pre-deprivation* process is required by the Fourteenth Amendment. *Id.* On the other hand, in special cases involving random or unauthorized deprivations, *post-deprivation* process is constitutionally sufficient "simply because [it] is the only [process] the State could be expected to provide." *Id.* at 128 (citing *Parratt*, 451 U.S. at 527; and *Hudson v. Palmer*, 468 U.S. 517 (1984)). In these special cases, "no matter how significant the private interest at stake and the risk of its erroneous deprivation, the [government] cannot be required constitutionally to do the impossible by providing pre[-]deprivation process." *Id.* at 129 (internal citations omitted). Accordingly, the next issue is whether Defendants Ryan's and Radzibon's conduct falls within the general rule or the "special case," and whether the process provided to Plaintiff by both Defendants was constitutionally sufficient.

### i. Defendant Ryan

Plaintiff's due process argument against Defendant Ryan is unclear. Plaintiff does not discuss Defendant Ryan's due process liability in his Motion for Summary Judgment, focusing instead on the proceedings initiated by Defendant Radzibon.[13] *See* ECF No. 46. In Response to Defendant's Motion for Summary Judgment and in Plaintiff's Reply in support of his Motion for Summary Judgment, Plaintiff conclusively claims that he was entitled to process before Defendant Ryan's seizure because "Defendant Ryan's actions were *not* random or unauthorized as [he] discussed the warrantless seizure of the Dogs with his supervisor" prior to seizing. ECF No. 49 at PageID.1229–30 (emphasis added).

Not so. An official's act is "random and unauthorized" when the act is unpredictable and when the official is not acting pursuant to any established state procedure. *DiLuzio v. Yorkville*, 796 F.3d 604, 614 (6th Cir. 2015) (citing *Zinermon*, 494 U.S. at 130). Plaintiff has not shown that Defendant Ryan was operating under any established state procedure when he seized Plaintiff's Dogs.[14] And both this Court and the Sixth Circuit have held an official-defendant's seizure of animals in analogous circumstances to be unpredictable, "random and unauthorized," and thus not requiring pre-deprivation process.

---

[13] Plaintiff titles his argument "Defendant Ryan and/or Radzibon deprived Plaintiff of His Rights Under the Fourth and Fourteenth Amendment" and the specific due process sub-title is "Plaintiff Reed's Fourteenth Amendment Right was Clearly Established *and Defendant Radzibon* Violated It[.]" *See* ECF No. 46 at PageID.671, 690 (emphasis added).

[14] Importantly, the Michigan Dog Law does not discuss an officer's ability to initiate a seizure of dogs. *See* MICH. COMP. LAWS § 287.261 *et seq.* Indeed, Defendant Ryan said he was *unclear* about whether to seize the Dogs and asked his supervisor for advice. ECF No. 46-4 at PageID.747. And, contrary to Plaintiff's argument, Defendant Ryan did not seize the Dogs expressly because his supervisor said so. As Defendant Ryan testified, he ultimately decided to seize the Dogs—not because some state procedure or supervisor dictated the seizure—but because *he* felt the seizure was in the best interest of public safety. *Id.* at PageID.748.

In *Sanders v. Genesee County*, the Sixth Circuit recently affirmed this Court's grant of summary judgment to an officer-defendant who seized a plaintiff's dogs—which suffered from extreme heat, unsanitary conditions, and no clean food or water—without pre-deprivation process because, as this Court noted, "[w]hen the situation necessitates 'quick action' by the state or makes efforts to provide a meaningful pre[-]deprivation process impracticable, the persons acting under state authority may proceed without violating the property owner's rights so long as the state provides an adequate post[-]deprivation procedure." *Sanders v. Genesee Cnty.*, 605 F. Supp. 3d 969, 983 (E.D. Mich. 2022), *aff'd sub nom. Sanders v. Genesee Cnty.*, No. 22-1596, 2023 WL 4543488 (6th Cir. July 14, 2023) (quoting *Harris v. Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994) and *Parratt*, 451 U.S. at 539). The situation here similarly necessitated quick action and made efforts to provide meaningful pre-deprivation process to Plaintiff impracticable.

First, Defendant Ryan responded to a bloody and bleak scene. The Kendziorski horse was shaking from shock, and had a bloody and mauled face, open wounds, deep lacerations, and exposed flesh. ECF No. 48-5 at PageID.1130. Blood was splattered throughout the walls of the horse's pen. *Id.* The Dogs had "cuts all over their bodies" and Koarick's jaw was hanging off his disfigured face. ECF No. 48–3 at pageID.1043. And although the Dogs were secure when seized and, therefore, no exigency existed under the Fourth Amendment analysis, this fact does not alter the due process analysis.[15] Indeed, in *Sanders* and other analogous precedent, the Sixth Circuit held that officer-defendants need not provide pre-deprivation process when seizing animals in

---

[15] Plaintiff repeatedly conflates exigency under the Fourth Amendment, allowing a seizure without a warrant, with a "random" or "unpredictable" deprivation under the Fourteenth Amendment, allowing a deprivation without prior process. *See, e.g.*, ECF Nos. 49 at PageID.1230–31 (arguing that *United Pet Supply* is inapposite, for due process purposes, because that case involved "emergency situations"); 54 at PageID.1270 (arguing that *Sanders* is inapposite, for due process purposes, because the Sixth Circuit and this Court found exigent circumstances to justify a warrantless seizure under the Fourth Amendment). But the two standards are not the same.

situations where "quick action" is necessary, despite the animals being secure at the time of seizure. *See Sanders*, 2023 WL 4543488 at *1 (seized dogs secure within a fenced yard and leashed to the fence); *United Pet Supply*, 768 F.3d at *473–75 (seized animals were in cages and secure). And although there is no question of material fact that the Dogs were secure in Amanda's SUV at the time of seizure, notably, the car was *open* at the time the Dogs were seized—further evidence that the situation Defendant Ryan faced required "quick action." ECF No. 48-5 at PageID.1132.

Second, pre-deprivation process *as to Plaintiff* would be impractical. Before the seizure, Amanda identified herself, not Plaintiff, as the Dogs' owner. ECF No. 48-13 at PageID.1171. The Dogs were physically in Amanda's care. ECF No. 46-3 at PageID.716–17. Indeed, the record suggests that Amanda did not mention Plaintiff to Defendant Ryan or anyone else at the barn, before or during the seizure of the Dogs. *See* ECF Nos. 46-3; 46-4. And it is undisputed that Plaintiff was in North Dakota and did not even know about the seizure until later in the evening when Amanda told him over the phone. ECF No. 46-12 at PageID.883–84. How Defendant Ryan could be expected to provide pre-deprivation process to an unknown and non-present co-owner of the Dogs, Plaintiff does not say. And the Michigan Dog law does not say, either. *See generally* MICH. COMP. LAWS § 287.261 *et seq.*

Although Defendant Ryan deprived Plaintiff of his legitimate property right, he did not deprive Plaintiff of due process under the Fourteenth Amendment. And, even if he did, Defendant Ryan would still be entitled to qualified immunity because Parties do not identity and this Court cannot find *any* precedent which puts the Constitutional question here "beyond debate." *See supra* Section III.1.c. Accordingly, summary judgment will be granted in Defendant Ryan's favor.

**ii. Defendant Radzibon**

Regarding Defendant Radzibon, Plaintiff argues he had a protected interest in receiving

notice and an opportunity to be heard, before and throughout the state destruction proceedings

under the Michigan Dog Law. ECF No. 46 at PageID.690.  Specifically, Plaintiff points to MICH.

COMP. LAWS § 287.286a, which states:

> (1) A district court magistrate or the district or common pleas court shall issue a
> summons similar to the summons provided for in section 20 to show cause why a
> dog should not be killed, upon a sworn complaint that any of the following exist:
>> (a) . . . a dog over 6 months old is running at large unaccompanied by its
>> owner or is engaged in lawful hunting and is not under the reasonable
>> control of its owner without a license attached to the collar of the dog.
>> (b) A dog, licensed or unlicensed, has destroyed property or habitually
>> causes damage by trespassing on the property of a person who is not the
>> owner.
>> (c) A dog, licensed or unlicensed, has attacked or bitten a person.
>> (d) A dog has shown vicious habits or has molested a person when lawfully
>> on the public highway.
>> (e) A dog duly licensed and wearing a license tag has run at large contrary
>> to this act.
> (2) After a hearing the district court magistrate or the district or common pleas court
> may either order the dog killed, or confined to the premises of the owner.

"Section 20," as cross-referenced, details the form that summons contemplated in § 287.286a

must take, and the process through which these summons may issue:

> If a person sustains any loss or damage to livestock . . . caused by dogs . . . the
> person or his or her agent or attorney may complain to the [township officer] of the
> township in which the damage occurred. The complaint shall be in writing, signed
> by the person making it, and shall state when, where, what, and how much damage
> was done, and, if known, by whose dog or dogs. The [township officer] shall at
> once examine the place where the alleged damage was sustained and the livestock
> . . . injured or killed, if practicable. He or she shall also examine under oath . . . any
> witness called. After making diligent inquiry . . . , the [township officer] shall
> determine whether damage has been sustained and the amount of that damage, and,
> if possible, who was *the owner* of the dog or dogs that did the damage. *If during
> the course of the proceedings the owner of the dog* causing the loss or damage to
> the livestock *becomes known*, the [township officer] shall request the district court
> judge to *immediately issue a summons against the owner* commanding him or her
> to appear before the [township officer] and show cause why the dog should not be
> killed. The summons may be served anyplace within the county in which the

damage occurred, and shall be made returnable not less than 2 nor more than 6 days from the date stated in the summons and shall be served at least 2 days before the time of appearance mentioned in the summons. Upon the return day fixed in the summons the [township officer] shall proceed to determine whether the loss or damage to the livestock was caused by the dog, and if so he or she shall immediately notify the sheriff or the animal control officer of the county of that fact and upon notification the sheriff or the animal control officer shall kill the dog wherever found.

MICH. COMP. LAWS § 287.280 (emphasis added).

Defendants respond that Plaintiff had adequate notice of the state destruction proceedings despite not being named as a party, never sought to intervene, and was in privity with his spouse, Amanda, throughout these proceedings. ECF No. 45 at PageID.455–57. At their core, these arguments concede that Plaintiff did not receive the process he was entitled to but cannot establish *prejudice* as a result.

This Court has recognized "[i]t is well-established that a plaintiff claiming a procedural due process violation must establish prejudice." *Krueger v. City of Eastpointe*, 452 F. Supp. 3d 679, 690 (E.D. Mich. 2020), *aff'd sub nom. Shandor v. Eastpointe*, No. 20-1385, 2021 WL 4775190 (6th Cir. Oct. 13, 2021) (collecting cases). "To establish prejudice, the plaintiff 'must show that the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations.'" *Id.* (quoting *Graham v. Mukasey*, 519 F.3d 546, 549–50 (6th Cir. 2008)).

There is no question that Plaintiff was not a named party in the state destruction proceedings initiated by Defendant Radzibon. *See* ECF No 46-5; 46-6. Although Plaintiff is correct that the Michigan Dog Law requires summons to be issued "against the owner" of a dog, how Plaintiff was prejudiced by not being named as a party in the state destruction proceedings is unclear. Indeed, all Plaintiff says on this point is that he "has undoubtedly suffered severe prejudice by not being given the opportunity to, at a minimum, successfully challenge the patently illegal

seizure of his property at the onset." ECF No. 49 at PageID.1233. But this argument conflates the "two seizures" that Plaintiff alleges occurred. As discussed above, Plaintiff was *not* entitled to process before Officer Ryan's initial seizure of the Dogs. *See* Section III.B.1.c.i. And Plaintiff has not shown *any* prejudice from the alleged inadequate process throughout the state destruction proceedings. Instead, the undisputed facts in this case suggest the opposite.

Although Plaintiff was in North Dakota, his wife Amanda kept him on notice throughout each step of the initial seizure of the Dogs and the criminal and state destruction proceedings. She first called and told him that the Dogs had gotten loose on October 15, 2019. ECF No. 46-12 at PageID.883. She called him later that day and told him that the Dogs were found in the Kendziorski barn and had been seized by Defendant Ryan. ECF Nos. 46-3 at PageID.719. Amanda called Plaintiff the next day, on October 16, and told him that she received a dangerous animal citation, which informed Amanda that she needed to appear in court proceedings. ECF No. 46-12 at PageID.884; *see also* ECF No. 46-20. Amanda told Plaintiff when the Dogs were transported to the Cheboygan Humane Society. ECF No. 46-12 at PageID.897. Plaintiff and Amanda discussed the criminal proceedings and Amanda's representation during those proceedings. *Id.* at PageID.885. Plaintiff knew Amanda retained counsel. *Id.* Amanda also told Plaintiff about the state destruction proceedings against the Dogs. *Id.* Indeed, Plaintiff returned from North Dakota specifically "to attend" court proceedings against Amanda and did so on at least one occasion. *Id.* at PageID.886. During the civil destruction proceedings, Plaintiff and Amanda filed, together, a "motion to be able to visit the [D]ogs." *Id.* at PageID.897–98.

Yet, despite this actual notice, Plaintiff never sought to intervene. And although Plaintiff claims he "didn't think [he] could" because "[n]o one told" him, *id.* at PageID.887, no one other than Plaintiff bears this burden. Importantly, this Court is not suggesting that Plaintiff was *required*

to intervene, *see* ECF No. 49 at PageID.1232, but the fact that Plaintiff had actual notice of the civil proceedings for nearly two years and never sought to intervene suggests a lack of prejudice. Indeed, in *Krueger v. City of Eastpointe*, this Court held that "[s]ince an individual with actual notice would be given the opportunity to contest the government action at issue, she would not be able to demonstrate that a 'substantially different outcome' would have resulted with proper notice, and thus would fail the prejudice requirement" of procedural due process. *Krueger*, 452 F. Supp. 3d at 690 (quoting *Graham*, 519 F.3d at 549–50).

And Plaintiff does not attempt to show that proper process would have led to a substantially different outcome—that the Dogs would not have been ordered to be "destroyed" or detained throughout proceedings. For example, Plaintiff does not allege he would have raised different arguments, presented different evidence, or approached the state destruction proceedings differently than his wife Amanda. And it is unclear to this Court—because Plaintiff does not show—how Plaintiff's interest in the civil destruction proceedings would have been materially different from his wife, Amanda, as both co-owned the Dogs.

But lack of prejudice is not the only reason Plaintiff's due process § 1983 claim fails as a matter of law against Defendant Radzibon. As discussed, Defendant Radzibon is entitled to absolute prosecutorial immunity from § 1983 damage claims for his conduct in initiating proceedings against Amanda, and not Plaintiff. *See supra* Section III.A.2.b. Accordingly, summary judgment will be granted in Defendant Radzibon's favor.

## 2.   Defendant Presque Isle County

Lastly, Plaintiff alleges that Defendant Presque Isle County deprived him of Fourteenth Amendment due process and is liable under § 1983 as a municipality. But Plaintiff, as a matter of

law, has not shown a constitutional violation under *Monell*, so this Court will grant summary judgment in favor of Defendant Presque Isle County.

As discussed, a municipality cannot be liable for § 1983 deprivations if their officers commit no constitutional violation in the first place. *Roell*, 870 F.3d 471, 487 (6th Cir. 2017). On the contrary, municipalities like Defendant Presque Isle are only liable under *Monell* for their "official policies" which cause an employee to violate another's constitutional rights. *Monell*, 436 U.S. at 692. Generally, there are four "avenues a plaintiff may take to prove the existence of a [defendant's] illegal policy or custom. The plaintiff can look to (1) the [defendant's] legislative enactments or official agency policies; (2) single actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

Plaintiff takes the second avenue and argues "Defendant Radzibon was an authorized decisionmaker with respect to . . . decisions as to which individuals would be provided constitutional protection when the County seeks the destruction." ECF No. 46 at PageID.697. Perhaps.[16] But Plaintiff has not shown that Defendant Radzibon's decision to initiate proceedings

---

[16] In *Pembaur v. City of Cincinnati*, the Supreme Court clarified that "liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made among various alternatives by the official . . . responsible for establishing **final** policy with respect to the subject matter in question." 475 U.S. 469, 483 (1986) (emphasis in original). Whether an official had final policymaking authority is ultimately a question of state law. *Id.* Here, state law authorizes prosecutors like Defendant Radzibon to "appear for the state or county, and prosecute or defense . . . all prosecutions, suits, and motions whether civil or criminal, in which the state or county may be a party or interested." MICH. COMP. LAWS § 49.153. Defendant Presque Isle County's duly enacted Animal Control Ordinance further states that the "civil and criminal provisions of this ordinance shall be enforced by those person(s) or agencies designated by the Presque Isle County Board of Commissioners." ECF No. 46-15 at PageID.935. And Ann Marie Main, a Presque Isle County Administrator, testified that County Prosecutors, like Defendant Radzibon, are designated to handle, at least, criminal prosecutions of ordinance violations. ECF No. 46-19 at PageID.962–

against Amanda deprived Plaintiff of Fourteenth Amendment Due Process rights. So *Monell* municipal liability will not lie.[17] *Roell* 870 F.3d 471, 487 (6th Cir. 2017) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.").

In sum, there are no genuine disputes of material fact regarding Plaintiff's procedural due process claims against all Defendants. FED. R. CIV. P. 56(a). Defendants Radzibon and Ryan did not deprive Plaintiff of due process and, even if they did, Defendant Ryan would be entitled to qualified immunity and Defendant Radzibon would be entitled to absolute prosecutorial immunity. Defendant Presque Isle is likewise entitled to summary judgment because Plaintiff, as a matter of law, has not shown an underlying constitutional violation of its officers. Accordingly, Count II of Plaintiff's Complaint will be dismissed in its entirety and Count III will be dismissed to the extent it alleges Defendant Presque Isle County deprived Plaintiff of his Fourteenth Amendment due process rights.

### C. Conversion

In Count V of Plaintiff's Complaint, he alleges that Defendants wrongfully converted his Dogs by initiating the state destruction proceedings, which resulted in an order that the Dogs be destroyed or euthanized. ECF No. 1 at PageID.15. Although Plaintiff did not seek summary judgment on this claim, Defendants did. *See* ECF No. 45 at PageID.464–67. Specifically,

---

63. Defendants' argument—that no official policy or custom exists because state law and the Michigan Constitution provide Defendant Radzibon's authority to act—is incorrect. *See* ECF No. 48 at PageID.1004–05. As the Supreme Court stressed in *Pembaur*, state law is the relevant metric for determining whether an official is a "final decisionmaker" whose decisions and conduct can create municipal "official policy" for *Monell* purposes. *Pembaur*, 475 U.S. at 483.

[17] And, Plaintiff's Fourteenth Amendment *Monell* claim would likewise fail as a matter of law if Plaintiff argued that Officer Ryan was a final decisionmaker because Officer Ryan's seizure did not violate the Fourteenth Amendment. *See supra* Section III.B.1.c.i.

Defendants argue they are entitled to government immunity and, to the extent Plaintiff's claim asserts violations of statutory conversion, such assertion fails as a matter of law. *Id.* Plaintiff did not assert any counter-arguments in response. *See* ECF No. 49.

As a threshold matter, conversion is a claim under both common and Michigan law. *Aroma Wines & Equip, Inc. v. Columbian Distribution Servs., Inc.*, 871 N.W.2d 136, 137 (Mich. 2015) (holding that, in amending Michigan's conversion statute, MICH. COMP. LAWS § 600.2919a, "the Legislature intended to create a separate statutory cause of action for conversion in addition to any other right or remedy a victim of conversion could obtain at common law." (internal quotations omitted)). But it is unclear whether Plaintiff is asserting common law conversion, a violation of Michigan's conversion statute, or both. *See* ECF No. 1 at PageID.15 (citing Michigan conversion statute but using common law language). Considering both claims, Defendants are immune from Plaintiff's common law conversion claim under the Michigan Governmental Tort Liability Act and Plaintiff cannot show statutory conversion as a matter of law. Summary judgment will be granted in favor of Defendants.

### 1. Common Law Conversion

The common law tort of conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines*, 871 N.W.2d at 141 (quoting *Thoma v. Tracy Motor Sales, Inc.*, 104 N.W.2d 360, 362 (Mich. 1960) and *Nelson & Witt v. Texas Co.*, 239 N.W. 289, 291 (Mich. 1931)). The ways in which conversion may be committed include: (1) intentionally dispossessing another of chattel; (2) intentionally destroying or altering a chattel in the actor's possession; (3) using a chattel in the actor's possession without authority to use it; (4) receiving a chattel pursuant to a sale, lease, pledge, gift or other transaction intending to acquire for himself or for another a proprietary interest in it; (5) disposing

of a chattel by sale, lease, pledge, gift or other transaction intending to transfer a proprietary interest in it; (6) misdelivering a chattel; or (7) refusing to surrender a chattel on demand. *Id.* at 144 (quoting *Thoma*, 104 N.W.2d at 362).

Implicated here, the Michigan Governmental Tort Liability Act (the "GTLA"), MICH. COMP. LAWS § 691.1407 *et seq.*, shields government officials from tort liability to different extents, depending on the type of official alleged to have committed a tort. Accordingly, each Defendant here is subject to a different GTLA analysis.

Turning first to municipalities, the GTLA provides absolute tort immunity to "government agencies" that are "engaged in the exercise or discharge of a government function." MICH. COMP. LAW § 691.1407(1). It is uncontested that Defendant Presque Isle County is a "government agency" for the purposes of the GTLA and was engaged in "governmental functions" at all times relevant to Plaintiff's Complaint. *See* MICH. COMP. LAWS § 691.1401(a) (defining "government agency" as the state itself or any political subdivisions), (b) (defining "governmental function" as activities "expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law"). Accordingly, Defendant Presque Isle is immune from Plaintiff's common law conversion claim.

Turning next to individuals, the Michigan Supreme Court clarified the test to apply when an individual government-defendant asserts immunity under the GTLA:

> (1) Determine whether the individual is a judge, a legislator, or the highest-ranking appointed executive official at any level of government who is entitled to absolute immunity under MICH. COMP. LAWS § 691.1407(5).[18]
> (2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.

---

[18] Subsection (5) entitles judges, legislators, and high-rank executives with immunity from *all* tort claims if the official was "acting within the scope of his or her judicial, legislative, or executive authority." MICH. COMP. LAWS § 691.1407(5).

(3) If the plaintiff pleaded a negligent tort, proceed under MICH. COMP. LAWS § 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer and whether:

> (a) the individual was acting or reasonably believed that he was acting within the scope of his authority
> (b) the governmental agency was engaged in the exercise or discharge of a governmental function, and
> (c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage.

(4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross v. Consumers Power Co.*, 363 N.W.2d 641 (Mich. 1984) by showing the following:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
> (c) the acts were discretionary, as opposed to ministerial.

*See Odom*, 760 N.W.2d at 228. Applying the *Odom* framework, both Defendant Radzibon and Defendant Ryan are immune from Plaintiff's common law conversion claim under the GTLA.

First, Defendant Radzibon is the "highest-ranking appointed executive official" within Presque Isle County. *See Bischoff v. Calhoun Cnty.*, 434 N.W.2d 249, 251 (Mich. 1988) (holding county prosecutor is "highest-ranking appointed executive official" within the county and entitled to absolute immunity under MICH. COMP. LAWS § 691.1407(5)); *Prosecuting Attorney*, PRESQUE ISLE CNTY., https://presqueislecounty.org/prosecuting-attorney/ (last visited Oct. 31, 2023) [https://perma.cc/L2S5-ZNNA] (describing Radzibon as the "Chief Law Enforcement Officer for Presque Isle County"). And his challenged conduct—initiating proceedings against Amanda without naming Plaintiff as a party—was "within the scope of his . . . executive authority." MICH. COMP. LAWS § 691.1407(5); *see also supra* Section III.A.2.

Second, although Defendant Ryan is a lower-ranking government official and Plaintiff alleges an intentional tort, *Department of Agriculture v. Appletree Marketing, L.L.C.*, 779 N.W.2d

237, 247 (Mich. 2010) ("Conversion is an intentional tort."), he is nevertheless entitled to GTLA immunity. The challenged conduct—the October 15, 2019 seizure of Plaintiff's Dogs—occurred during the course of Defendant Ryan's employment and was within the scope of his authority as a Presque Isle County Sheriff's Deputy. *See generally* ECF No. 46-4 at PageID.744–49. Not a scintilla of evidence suggests that Defendant Ryan effectuated the seizure of Plaintiff's Dogs with malice. Indeed, the evidence suggests the opposite—that Defendant Ryan acted in good faith. *See id.* at PageID.748–49 (noting the seizure was in the best interest of the public and was effectuated "for public safety"). And Defendant Ryan's seizure was discretionary, as opposed to ministerial.[19] *Ross*, 363 N.W.2d at 634–35, 640 (noting that "discretionary acts" involve significant decision-making while "ministerial acts" concern the execution of a decision and may only involve "minor decision-making").

Accordingly, all Defendants are immune from Plaintiff's common law conversion claim.

### 1.      Statutory Conversion

The next issue is whether Defendants are entitled to summary judgment on Plaintiff's conversion claim, to the extent it alleges a violation of Michigan law. In 1976, the Michigan Legislature adopted "what we now refer to as the statutory conversion remedy[.]" *Aroma Wines*, 871 N.W.2d at 145. As amended, the Michigan conversion remedy allows a plaintiff to recover three times the amount of damages on a conversion claim if the plaintiff can show the defendant converted the plaintiff's property "to the [defendant's] own use." MICH. COMP. LAWS § 600.2919a(1)(a).  As the Michigan Supreme Court emphasized, the Legislature's addition of this

---

[19] Although Defendant Ryan states that Sergeant Beaudry, his supervisor, told him to seize the Dogs, Beaudry only did so *after Ryan asked* whether seizure was appropriate. ECF No. 46-4 at PageID.747. Further, Defendant Ryan, the sole officer who effectuated the seizure, stated he seized—not because he was directed to do so by Beaudry—but because he felt it was in the "best interest of public safety[.]" *Id.* at PageID.748.

element was intended "to limit [the statute] to a subset of common-law conversions[.]" *Aroma Wines*, 871 N.W.2d at 146. To prove that a defendant committed a statutory conversion, a plaintiff must show, in addition to the elements of common law conversion, that "the defendant employed the converted property *for some purpose personal to the defendant's interests*[.]" *Id.* at 148 (emphasis added).

Even when viewing the evidence and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has not shown that any Defendant "converted" his Dogs for personal use. *Compare id.* at 149 (finding personal use when wine warehouse-defendant moved wine of distributor-plaintiff to an uncontrolled environment so defendant could renovate the climate-controlled space and increase storage capacity) *and Univ. of Michigan Regents v. Valentino*, No. 349942, 2020 WL 7759669, at *5 (Mich. Ct. App. Dec. 29, 2020) (finding personal use when defendant cashed a check to gain an advantage over plaintiff) *with Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, No. 1:14-CV-383, 2021 WL 3291525, at *10 (N.D. Ind. July 30, 2021) (finding no personal use when warehouse-defendant moved contaminated food of plaintiff-wholesaler because defendant had a "legal obligation" to do so).

In *Kreuger v. City of Eastpoint*, this Court granted summary judgment in favor of defendants on a plaintiff's statutory conversion claim because, although defendants impounded the plaintiff's car after plaintiff was arrested and the car remained impounded for years, the plaintiff could not show that the conversion—if it occurred—was for the defendant's own use. 452 F. Supp. At 696–98. As in *Krueger*, no Defendant here has in any way benefited from Plaintiff's Dogs being kept in the Cheboygan Humane Society for "years on end." *See id.* at 697. Defendants here do not "in any way commercially benefit[] or advance[] their interest in a personal way" nor are Defendants "retaining Plaintiff's [Dogs] to obtain leverage[.]" *See Id.* Because Plaintiff cannot

show that any Defendant wrongfully exerted dominion over his Dogs for personal use, summary judgment will be granted in favor of Defendants to the extent Plaintiff alleges conversion under Michigan statute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment mandated when it is clear that a plaintiff cannot satisfy the legal requirements necessary to establish its claim).

### D. Declaratory and Injunctive Relief

Lastly, Count IV of Plaintiff's Complaint is entitled "Declaratory and Injunctive Relief." As a threshold matter, "declaratory and injunctive relief are remedies, not causes of action." *Cruz v. Cap. One, N.A.*, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016) (citing *Mettler Walloon, L.L.C. v. Melrose Twp.*, 761 N.W.2d 293, 317 (Mich. App. 2008); *Qadeer v. Bank of Am., N.A.*, 2013 WL 424776, at *7 (E.D. Mich. Feb. 4, 2013). So this Court will treat this "count" as merely seeking certain remedies for the constitutional deprivations and state torts alleged in Plaintiff's Complaint. Specifically, Plaintiff seeks a declaration that the state destruction proceedings are "void" for failure to include Plaintiff as a named party and seeks to permanently enjoin the execution of the court order to euthanize the Dogs. ECF No. 1 at PageID.13–14. But Plaintiff cannot show continuing irreparable injury and, thus, lacks standing for this type of relief.

A plaintiff must establish Article IIII standing for *each* type of relief sought and, importantly, standing to pursue a § 1983 damages claim does not automatically vest standing to pursue declaratory or injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (rejecting argument that plaintiff's "pending damages suit affords him Article III standing to seek an injunction as a remedy"). The standing showing for both declaratory and injunctive relief is the same*. See Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019); *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997).

Generally, Article III standing requires a plaintiff to show (1) that they have suffered an injury-in-fact that was (2) caused by Defendants' conduct and that (3) this Court can likely redress the injury with a decision for Plaintiffs. *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.,* 927 F.3d 396, 405 (6th Cir. 2019). But the standing analysis for injunctive and declaratory relief, specifically, can be complicated because *past* constitutional injury is not the same as *continuing irreparable injury*, the latter of which is necessary for this Court to issue the injunction Plaintiff requests. *Saieg v. City of Dearborn*, 641 F.3d 727, 733 (6th Cir. 2011) (quoting *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 349 (6th Cir.2010) (internal quotations omitted)).

As the Sixth Circuit summarized, "[t]he distinction between past and ongoing or future harms is significant because the type of harm affects the type of relief available. Past harm allows a plaintiff to seek *damages*, but it does not entitle a plaintiff to seek *injunctive or declaratory relief*. This is because the fact that a harm occurred in the past 'does nothing to establish a real and immediate threat that' it will occur in the future, as is required for injunctive relief." *Kanuszewski*, 927 F.3d at 406 (quoting *Lyons*, 461 U.S. at 105) (emphasis added).

Importantly, the *only* constitutional violation Plaintiff has shown is that Defendant Ryan's October 15, 2019 warrantless seizure of the Dogs violated the Fourth Amendment.[20] But the harm from this violation was felt in 2019 and "does nothing to establish a real and immediate threat" today. *Lyons*, 461 U.S. at 105. And any argument that "continuing irreparable harm" exists because the Dogs have been deprived from Plaintiff throughout the state destruction proceedings and these proceedings occurred after the violative seizure is far too attenuated. The civil destruction proceedings against Amanda could have been filed regardless of whether the Dogs were initially

---

[20] But Defendants Ryan and Radzibon are immune from damages and Defendant Presque Isle County is not liable under *Monell*. *See supra* Section III.A.

seized. The Michigan Dog Law does not require dogs to seized from a scene before destruction proceedings are initiated. Indeed, the Michigan Dog Law does not address seizures and states that destruction summons are proper so long as a sworn complaint has been filed stating that a dog destroyed property, caused damaged by trespassing, or showed vicious habits. MICH. COMP. LAWS § 287.286a. Accordingly, the sole constitutional violation in this case does not afford Plaintiff standing to seek the requested declaratory and injunctive relief.

**IV.**

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 45, is **GRANTED**.

Further, it is **ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 46 is **DENIED**.

Further, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

**This is a final order and closes the above-captioned case.**

Dated: November 13, 2023                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge